UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| TIMOTHY WALSH,<br>    Plaintiff,<br><br>v.<br><br>PETER ALVITI, individually and in his capacity as Director, Rhode Island Department of Transportation; and WILLIAM CARCIERI, individually and in his capacity as Area Manager, Rhode Island Department of Transportation, LLC,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 24-cv-495-MRD-PAS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Plaintiff Timothy Walsh ("Walsh") initiated this suit pursuant to 42 U.S.C. § 1983 against Defendants Peter Alviti ("Alviti") and William Carcieri ("Carcieri") (collectively, "Defendants") in both their individual capacities and in their capacities as officials of the Rhode Island Department of Transportation ("RIDOT"). Walsh's complaint alleges that he was terminated by his private employer, RICON Construction LLC ("RICON"), because of actions taken by the Defendants, which he claims violated his Fourteenth Amendment due process rights. ECF No. 1 ¶¶ 40–49. Walsh timely filed this instant civil action in November 2024, seeking compensation for lost wages, punitive damages, attorneys fees and costs, and equitable relief in the form of: 1) a declaration that the Defendants' actions violated his due process rights;

2) an injunction requiring the Defendants to remove any restrictions on his ability to work on RIDOT projects and to remove him from any employment "blacklist"; and 3) an injunction ordering the Defendants to retract their statements made in a letter dated July 18, 2024.  ECF No. 1 ¶¶ a–g.  Before this Court is the Defendants' motion to dismiss Walsh's suit for failure to state a claim pursuant to FRCP 12(b)(6).  ECF No. 11.  For the reasons stated below, the Court GRANTS the Defendants' motion.

## I. BACKGROUND

Plaintiff Walsh was employed by RICON, a subcontractor of Rossi Electric, as a Project Superintendent.  ECF No. 14 at 3.  Rossi Electric subcontracted RICON to complete a contract with RIDOT for a statewide project aligning pedestrian crosswalks with ADA[1] regulations.  *Id.*  On July 18, 2024, RIDOT Area Manager Carcieri communicated dissatisfaction with Walsh's performance to RICON in writing.  *Id.*  In his July letter, Carcieri accused Walsh of demonstrating a "blatant disregard for the implementation of the ADA requirements associated with the multiple wheelchair ramps project wide."  ECF No. 11-1 at 2.  Carcieri's letter also accused Walsh of completing additional work "outside of the areas shown on the project plans which [would] NOT be compensated for," ECF No. 11-1 at 2, and "failing to comply with safety standards for use of steel plates in the road, [] causing a hazard."  ECF No. 1 ¶¶ 23.  In addition to memorializing these and other grievances

---

[1] The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12191-12213, guarantees the right of any individual to be from disability discrimination in the enjoyment of public places of accommodation.

2

in the July letter, Carcieri invoked the RIDOT Standard Specification Policy 108.05.[2] ECF No. 11-1 at 2. This policy mandated Walsh's removal from the project, required written approval for Walsh to work on any other RIDOT projects, and noted that any refusal to comply would result in a withholding of progress payments. *Id.* RICON subsequently terminated Walsh's employment, effective July 31, 2024. ECF No. 1 ¶ 33.

At some point prior to his termination, Walsh met with RICON President, James Hathaway, and was left with the impression that "RICON did not wish to terminate [him], but only did so at the behest of Defendant Carcieri" out of "fear[] of losing its subcontract" "and/or having payments withheld." *Id.* ¶¶ 29–34. Walsh then sought counsel and defended himself in a reply letter to Alviti dated September 11, 2024, in which he refuted the allegations and demanded a name clearing hearing; Walsh claims he never received a response. *Id.* ¶¶ 37–39. According to Walsh, at a later meeting with RICON, RIDOT modified his employment restriction to "any capacity other than Project Superintendent." *Id.* ¶ 35. In any event, Walsh alleges that he is for "all practical purposes blacklisted from future employment in his chosen profession in public sector construction, because [any] restriction on serving on RIDOT projects marks him to potential employers as incompetent." ECF No. 1 ¶ 36.

---

[2] The Rhode Island Department of Transportation issues Standard Specifications for Road and Bridge Construction which governs contract work awarded by the Rhode Island Department of Transportation. Rhode Island Department of Transportation, *Preface*, RI Dep't of Transp. Standard Specifications for Road and Bridge Construction, https://www.dot.ri.gov/business/bluebook/docs/Blue_Book_02_2025.pdf, [https://perma.cc/PA7T-4XXV].

3

From Walsh's perspective, RIDOT violated his due process rights by unreasonably interfering with his right to follow his chosen profession. ECF No. 14 at 10. He specifically contends that: 1) "the Defendants' actions had the extreme effect of essentially blacklisting him from his chosen profession, and that those actions were the result of animus;" ECF No. 14 at 8–9; 2) any restrictions on his employment outlined by RIDOT "flagged [him] as incompetent," ECF No. 14 at 9; 3) RIDOT violated his procedural due process rights by denying him "any opportunity for a name clearing hearing" with respect to the "charges of incompetence made against him" in Carcieri's July letter, ECF No. 14 at 13;[3] and 4) he suffered additional reputational harm by the invocation of RIDOT's Standard Specification 108.05 in Carcieri's July Letter, which would require "any future employer of the Plaintiff [] to undergo the step of obtaining specific written permission before allowing the Plaintiff to work on any RIDOT project," ECF No. 14 at 12.

The Defendants predicate their attack on Walsh's claims in the immediate motion to dismiss for lack of standing and failure to state a plausible claim.[4] First, they argue that Walsh lacks standing because his termination by RICON, a nonparty,

---

[3] Walsh's procedural due process claim is rooted in Walsh's "[] liberty interest in his reputation, plus deprivation of some additional right or interest," known as a "stigma plus" claim. ECF No. 14 at 10.

[4] The Defendants also allege they are immune from Walsh's Section 1983 claims by qualified immunity. They argue that Walsh has failed to allege facts sufficient to establish a constitutional right that was violated and to plead sufficient facts to permit the inference that the Defendants violated a "clearly established" right, both requirements for overcoming qualified immunity. ECF No. 11 at 12. However, the Court need not opine on this argument as it resolves the motion on Defendants' other claims.

is not an injury redressable by this suit against RIDOT. ECF No. 16 at 3. They claim that "RICON's independent act of terminating Mr. Walsh breaks the causal chain between RIDOT's restriction and Plaintiff's alleged injury." ECF No. 11 at 7. They also refute Walsh's attempt to blame his termination on RICON's fear of losing its contract with RIDOT because, prior to his termination, "RIDOT had already instructed RICON to identify a replacement on the Project, indicating quite clearly RIDOT's intent to continue working with RICON on the Project." *Id.* at 6. The Defendants reiterate that at no time has RIDOT "deemed [Walsh] ineligible for RIDOT work in the future." ECF No. 16 at 2. In support, they point out that one month after Walsh's termination, "RIDOT informed RICON in writing that [] Walsh [was] not restricted from working on any other aspect of RIDOT projects, other than field work" via email correspondence.[5] ECF No. 11 at 3.

They next argue that Walsh was not deprived of his substantive due process rights because he has not been blacklisted or otherwise universally prohibited from public employment, in fact, they argue, he is still "expressly permit[ted] to work on

---

[5] The Defendants have included this email as Exhibit 2 to their motion to dismiss. It is an August 22, 2024 email from Lori Fisette (RIDOT) to James Hathaway (RICON) indicating that Walsh would not be authorized to return to fieldwork on RIDOT projects but was not restricted in any way from working on other aspects of RIDOT projects. The Defendants argue that because it is central to the Plaintiff's claim and its authenticity is not disputed, the Court should consider it in the context of Rule 12(b)(6) and refrain from converting the immediate motion into a Motion for Summary Judgment. The Court has decided to refrain from considering this correspondence in determining the outcome of this motion, given that it is not mentioned in the complaint and FRCP 12(d) states that "if matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment."

RIDOT projects" with some conditions. *Id.* at 8. They emphasize that any conditions on his employment were "communicated privately and exclusively to RICON" and did not amount to a government blacklist or to a removal of his license. *Id.* at 8. As for Walsh's procedural due process claim, the Defendants argue that at no point did RIDOT direct RICON to fire Walsh. *Id.* at 11. Instead, they merely invoked the Standard Specification restriction, which they felt was warranted based on Walsh's work performance. *Id.* The Defendants insist that their actions did not create any legal obstacles for Walsh's employment opportunities and cannot constitute a violation of procedural due process because he is not barred from public works construction and future employers do not have to perform any burdensome inquiries as to his professional status or reputation. *Id.* at 11–12; ECF No. 16 at 7–8.

## II. LEGAL STANDARD

The Court denies a motion brought under FRCP 12(b)(6) only if the plaintiff has plead a claim which provides a "'short and plain statement of the claim showing that the pleader is entitled to relief'" with "'enough factual detail to make the asserted claim plausible on its face.'" *Cardigan Mtn. Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (first quoting Fed. R. Civ. P. 8(a)(2) then *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The reviewing court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the [plaintiff's] favor." *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011).

### III.  STANDING

As a threshold matter, this Court must determine whether Walsh has standing to bring his claims.  A plaintiff has standing if they: (1) have suffered an injury in fact; (2) can demonstrate a causal connection between the alleged injury and the conduct complained of; and (3) can show that their alleged injury is likely to be redressed by the requested relief.  *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009) (citing *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  At this pleading stage, general factual allegations of injury resulting from the Defendant's conduct are sufficient because on a motion to dismiss the court "presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561.

Here, Walsh alleges that his injury for standing purposes is the reputational harm he suffered as a result of the Defendants' July letter to his employer, which invoked the Standard Specification and placed conditions on his employment, ultimately "prompt[ing] his termination."  ECF No. 14 at 13.  He argues that the letter had the effect of "brand[ing] [him] as incompetent, and also effectively blacklist[ing] him from further RIDOT projects, making him unfit for the role in which he was employed." *Id.*  Walsh argues that "at the Rule 12(b)6) stage, [he] is entitled to the inference that [the Defendants'] actions prompted his termination." *Id.*

This Court agrees that Walsh's termination and alleged reputational harm suffice as an injury in fact. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021)

7

(reasoning that reputational harm can serve as a concrete harm for standing when inaccurate information is disseminated that could malign a plaintiff's character). Walsh has alleged that he suffered a concrete economic harm as a result of the Defendants' July correspondence, and at this stage, the Court accepts as true his allegation that the Defendants' correspondence to RICON caused his termination and damaged his professional reputation. *See Ashcroft*, 556 U.S. at 678 (stating that "[a] claim has facial plausibility when the [] plead[ed] factual content allows [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007))); *see also TransUnion*, 594 U.S. at 417 (stating that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including … reputational harm."); *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 45 (1st Cir. 2005) (observing that "[t]he requirement that an alleged injury be fairly traceable to the defendant's action does not mean that the defendant's action must be the final link in the chain of events leading up to the alleged harm).

Having established that Walsh has met the first two prongs of standing, the court now considers redressability. Walsh makes numerous requests for relief in his complaint, including injunctive relief ordering the Defendants to remove any restrictions on his ability to work on RIDOT projects and to retract the statements the Defendants made in the July correspondence. ECF No. 1 ¶¶ a-g. A favorable

decision from this Court granting the requested equitable relief would redress Walsh's alleged injury to his reputation which he traces to the statements made in the July letter, namely the restrictions he alleges labeled him "incompetent" and "blacklisted" from his profession. *See In re Fin. Oversight & Mgmt. Bd. for P.R. v. U.S., et al.*, 995 F.3d 18, 22 (1st Cir. 2021) (quoting *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 49 (1st Cir. 2020) (noting that "although [the plaintiff] need not demonstrate that [his] entire injury will be redressed by a favorable judgment, the plaintiff must show that the court can fashion a remedy that will at least lessen the injury")).

This court is satisfied that Walsh has alleged sufficient facts to establish Article III standing to bring his due process claims against the Defendants. *See Lujan*, 504 U.S. 555, 561 (1992).

## IV.   DISCUSSION

As previewed above, Walsh initiated suit against the Defendants pursuant to 42 U.S.C. § 1983 claiming that Defendants "unreasonabl[ly] interfere[d] with his freedom to choose his chosen profession," and in turn violated his due process rights under the Fourteenth Amendment. ECF No. 14 at 2. "The right to hold private employment and to pursue one's chosen profession free from unreasonable government interference is encapsulated in the liberty concept of the Due Process Clause" of the Fourteenth Amendment. *Mead v. Independence Ass'n*, 684 F.3d 226, 232 (1st Cir. 2012) (citing *Greene v. McElroy*, 360 U.S. 474, 492 (1959); *Truax v. Raich*, 239 U.S. 33, 38 (1915)). The Fourteenth Amendment prevents state actors

9

from depriving a person's right to "liberty or property without due process of law." U.S. Const. amend. XIV. It enshrines the right to procedural and substantive due process. *See DePoutot v. Rafaelly*, 424 F.3d 112, 118 (1st Cir. 2005) (noting both components). The procedural aspect of the Fourteenth Amendment ensures that the government uses fair procedures. *Id*. The substantive aspect protects individuals against certain offensive government actions, focusing on the substance of the government's actions as opposed to the manner of the government's actions. *See Amsden v. Moran*, 904 F. 2d 748, 754 (1st Cir. 1990). Based on the Complaint and binding case law, Walsh fails to plead a plausible Fourteenth Amendment claim.

### A. SUBSTANTIVE DUE PROCESS

Walsh alleges that the July letter sent by the Defendants included false statements which were made out of "malice" and had the effect of "flagg[ing] the Plaintiff as incompetent" and "blacklisting him from his chosen profession," which, as stated above, he believes amounts to a substantive due process violation of his right "against unreasonable governmental interference with the right to follow one's chosen profession." ECF No. 14 at 7, 9. Courts have generally found this right to be triggered when government interference is "direct and unambiguous, as when a city official demands that a restaurant fire its bartender, or a state agency explicitly threatens to prosecute a private company's clients if they continue to contract with the company." *Mead*, 684 F.3d at 232 (cleaned up). A plaintiff must show that he was deprived of a protected liberty or property interest by "conscious-shocking" conduct of a government actor in order to succeed on a substantive due process claim.

*Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006). "To be actionable, the official conduct must be outrageous, stunning, and uncivilized, more than a humdrum legal error or bad-faith violations of state law." *Vázquez Lazo v. Walker*, No. 15-1891 (PAD), 2024 WL 3226633, at *11 (D.P.R. June 28, 2024) (citing *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992)). Although Walsh correctly asserts that he has a right to pursue his chosen profession, his allegations against the Defendants fall short of demonstrating that they behaved in a "conscious-shocking" manner. *See Santiago de Castro v. Morales Medina*, 943 F.2d 129, 130–31 (1st Cir. 2008) (declining to find conscience-shocking behavior where a supervisor publicly berated an employee in the presence of her students and publicly defamed her amidst her coworkers). As each of the parties noted at the hearing on this motion on September 11, 2025, the plain language of the July letter did not instruct RICON to terminate Walsh. Walsh's efforts to bolster his position by arguing that Carcieri's July letter was prompted by malice is equally unsuccessful. The Defendants reasonably expressed concerns with Walsh's work performance and communicated only with interested parties to address their apprehensions. RICON "had a real interest in knowing what was going on" with its employees and such correspondence is a matter of course in the subcontracting relationship. *See Ventetuolo v. Burke*, 596 F.2d 476, 485 (1st Cir. 1979). For the reasons stated, Plaintiff simply does not allege a plausible substantive due process claim.

## B. PROCEDURAL DUE PROCESS

An individual's liberty interest is implicated if: 1) a state actor makes "[a] charge against [that person] that might seriously damage [the person's] standing and associations in the community"; or 2) if a state actor imposes "a stigma or other disability that foreclose[s] [the person's] freedom to take advantage of other employment opportunities." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972). But defamation or injury to reputation alone are not liberty interests protected by the procedural guarantees of the Fourteenth Amendment, and therefore are inadequate to carry a due process claim. *See Paul v. Davis*, 424 U.S. 693, 701–702 (1976) (explaining "the weight of our decisions establishes no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). A person alleging stigmatization by a government actor must also demonstrate an injury on "some interest 'more tangible' than reputational harm." *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 9 (1st Cir. 2011) (citing *Paul*, 424 U.S. at 701); *see also Silva*, 130 F.3d at 32 (noting that "reputational injury must be accompanied by a change in the injured person's status or rights under substantive state or federal law"). "A plaintiff must accordingly show that defendants made a false stigmatizing public statement concerning reasons for termination which resulted in significant damage to the employee's standing in the community or foreclosed further employment opportunities." *Vázquez Lazo,* 2024 WL 3226633, at *9 (citing *Ventetuolo*, 596 F.2d at 482–483). Courts have found a liberty interest in

12

cases where the employer has accused the employee of fraud, dishonesty, immorality, or criminality. *See Ventetuolo*, 596 F.2d at 484 n.13 (observing the trend in various circuits).

In his opposition to the immediate motion, Plaintiff rests his procedural due process claim on "[his] liberty interest in his reputation," plus the invocation of Section 108.05 of the Standard Specifications and the later-implemented restriction on Plaintiff's ability to participate in "fieldwork" projects because "any future employer would need to undergo the step of obtaining specific written permission before allowing the Plaintiff to work on any RIDOT project." ECF No. 14 at 10, 12. Thus, at issue before the Court is whether the July letter ordering Walsh's removal from the project plus the invocation of the Standard Specification are sufficient to implicate due process requirements. In other words, the Court must determine whether these actions amounted to "false stigmatizing public statements" which then "resulted in significant damage to the employee's standing in the community or foreclosed further employment opportunities." *Vázquez Lazo,* 2024 WL 3226633, at *9 (internal citations omitted).

In the July letter, the Defendants charged Walsh with a substandard job performance, claiming that he disregarded "ADA requirements associated with wheelchair ramps project wide;" "complete[d] additional work that is outside of the [] project plans;" and that he failed to use steel plates in accordance with state requirements. ECF No. 11-1 at 2. But these basic complaints about performance do not rise to the level of allegations of "dishonesty" or "moral turpitude" which courts

13

have traditionally found to create a stigma damning enough to foreclose employment opportunities and activate a plaintiff's liberty interests. *See Ventetuolo*, 596 F.2d at 484 n.13.

Furthermore, there is no indication or allegation that the letter was distributed to the public or even to potential employers. Without dissemination, Walsh's liberty interest simply cannot be implicated. *See Silva*, 130 F.3d at 33 (finding that plaintiff's liberty interest was not implicated because city officials did not disseminate information about plaintiff outside of the personnel setting). Accordingly, this Court cannot find an infringement on Walsh's defamation liberty interest which warranted a due process hearing.

Even if the Court interprets the griping July letter as labeling Walsh "incompetent" and determines that he has successfully demonstrated reputational harm, Walsh still has not alleged an "adverse effect on some interest more tangible than reputational harm." *URI*, 631 F.3d at 9 (quoting *Paul*, 424 U.S. at 701) (internal quotations removed). The invocation of the Standard Specification and the implementation of conditions on Walsh's employment duties do not rise to the level of a constitutional violation because they cannot be said to foreclose further employment opportunities. As a matter of fact, Walsh may continue to work on other aspects of projects with RIDOT and may still seek work on entirely different projects with any other entity.[6] Moreover, Walsh does not allege or suggest that he has sought

---

[6] Despite this, the Court does find it troubling that employees and subcontractors of RIDOT may be subject to RIDOT restrictions on the scope of their

and been denied other employment on the basis of RIDOT's conditions. Even if future employers are burdened to inquire with RIDOT on Walsh's role on any given project, this Court still cannot find a constitutional violation because "a due process claim cannot rest solely on reputational harm or damages that predictably flow from such reputational harm." *Amesbury v. Sisson*, C.A. No. 21-cv-409-JJM-AEM, 2025 WL 1798907, at *7 (D.R.I. June 30, 2025) (citing *Mead*, 684 F.3d at 233).

Despite Walsh's claim that "there has never been a holding that [an] employee must be a government employee to be afforded procedural due process protection," ECF No. 14 at 10–11, he cannot rely on his termination to satisfy the "plus" condition because he worked for a non-governmental employer and lost a private position. *Pendleton v. City of Haverhill*, 156 F.3d 57, 63 (1st Cir. 1998) (holding that "a violation of constitutional proportions under a 'stigma plus' theory exists only if, and to the extent that, the opportunities lost are government benefices denied as a result of government action"). Accordingly, Walsh fails to plausibly allege a procedural due process claim.

### C. SUPPLEMENTAL CLAIMS

Without any viable federal claims, the Court is left only with Walsh's state law claims of false light, defamation, and tortious interference with economic advantage. ECF No. 1 ¶¶ 50–69. This Court "may decline to exercise supplemental jurisdiction" over the remaining state law claims when it has dismissed the "anchoring federal

---

employment for the entirety of their career and have no process to remove such restrictions or to contest allegations made by RIDOT officials.

claims." *Desjardins v. Willard*, 777 F.3d 43, 45 (1st Cir. 2015); (citing 28 U.S.C. § 1367(c)(3)). This Court declines to exercise supplemental jurisdiction based on Walsh's ability to pursue his claims in state court and the strong interests of the State of Rhode Island in adjudicating the merits of a state law claim. *See Camelio v. Am. Fed'n.*, 137 F.3d 666, 672 (1st Cir. 1998) (noting that whether a court should decline supplemental jurisdiction depends on a "pragmatic and case-specific evaluation of a variety of considerations," including "the interests of fairness, judicial economy, convenience, and comity").

## V.    CONCLUSION

For the reasons stated above, this Court finds that Walsh has not filed a plausible claim against RIDOT for a due process violation. Accordingly, Defendants' Motion to Dismiss for Failure to State a Claim is GRANTED and Plaintiff's case is hereby DISMISSED.

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

September 26, 2025